```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**STATE NAT'L. INS. CO.**                           **CIVIL ACTION**

**VERSUS**                                          **NO. 11-2207**

**CUMMINS MID-SOUTH, L.L.C., ET AL.**               **SECTION "B"(3)**

ORDER AND REASONS

Before the Court are Plaintiff State National Insurance Company's ("SNIC") Motion for Partial Summary Judgment, and Defendant Romeo Papa, LLC's ("Romeo") Opposition to the Motion, as well as SNIC's Supplemental and Reply Memorandums in support of their Motion, with attached exhibits. (Rec. Docs. No. 22, 22-1, 27, 31, & 36). Also before the Court are Cummins Mid-South, LLC's ("Cummins") Motions for Summary Judgment against SNIC, SNIC's Opposition to the Motions, and Cummins' Reply in support of its latter Motion for Summary Judgment. (Rec. Docs. No. 38, 39, 41, 42, 43, & 46). Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that SNIC's Motion for Partial Summary Judgment (Rec. Doc. No. 22) is **GRANTED.**

**IT IS FURTHER ORDERED** that Cummins' first Motion for Summary Judgment (Rec. Doc. No. 38) is **GRANTED.** Accordingly,

**IT IS FURTHER ORDERED** that Cummins' second Motion for Summary Judgment (Rec. Doc. No. 39) is **DISMISSED** as moot in light of the foregoing orders.

Cause of Action and Facts of the Case:

SNIC is an insurer who initially sought recovery from Defendant Cummins via subrogation for damages Cummins caused to SNIC's insured, defendant Romeo.[1] (Rec. Docs. No. 1, 22-1 at 4, & 22-2). SNIC claims that in September 2008, Cummins rendered services to repair Romeo's vessel, the M/V PORT EADS, which was covered by an SNIC insurance policy. (Rec. Doc. No. 22-1 at 1-3). SNIC further alleges that Cummins' inadequate services led to further damage to the engine of the M/V PORT EADS, which had to be replaced by another shipyard. (Rec. Doc. No. 22-1 at 3). Romeo subsequently filed a claim with SNIC seeking recovery of $199,236 in damages caused by Cummins' inadequate repairs to the M/V PORT EADS. (Rec. Docs. No. 22-1 at 3-4). On June 25, 2009, SNIC paid Romeo $149,236 on the claim, after application of a $50,000 deductible. (Rec. Docs. No. 22-1 at 4, 22-7, & 22-8). Pursuant to its payment to Romeo and under the terms of the insurance policy, SNIC reserved subrogation rights to recover against Cummins. (Rec. Docs. No. 22-1 at 4, 22-7, & 22-2 at 5).

At issue in two of the instant motions (Rec. Docs. No. 22 & 38) is the allegation that Romeo improperly settled the claim against Cummins subsequent to receiving payment from SNIC, therefore extinguishing SNIC's right to recovery against Cummins

---

[1] SNIC invokes the jurisdiction of this Court pursuant to "General Maritime law . . . and 46 U.S.C. § 30106."). (Rec. Docs. No. 1 at 1 & 16 at 1).

2

via subrogation. (Rec. Docs. No. 22-1, 27 at 4-5, & 38). SNIC and Cummins allege that on July 28, 2009, Romeo settled any claims for damages caused to the M/V PORT EADS by Cummins by accepting a $69,949 credit toward other non-related outstanding invoices Romeo owed Cummins. (Rec. Docs. No. 22-1 at 4-5, 22-9 at 2, 22-10, 22-3,22-4, & 38-1). SNIC argues that as a result of Romeo's settlement with Cummins, SNIC's claim against Cummins via subrogation is prejudiced. (Rec. Doc. No. 22-1 at 12). Therefore, SNIC asserts in its instant motion for partial summary judgment that under the terms of the insurance contract and applicable law, Romeo must return the $149,236 payment from SNIC. *Id*. Likewise, Cummins, in its own motion, argues that because the settlement it reached with Romeo extinguished any claim SNIC might have against Cummins, Cummins is entitled to summary judgment in its favor. (Rec. Doc. No. 38-1 at 11).[2]

Cummins also filed an additional motion arguing that it is entitled to summary judgment against SNIC because its claims are time-barred by the doctrine of laches, which SNIC opposed. (Rec. Docs. No. 39, 43, & 46).

---

[2] In opposition to Cummins' motion for summary judgment based on settlement with Romeo, SNIC submitted a two-paragraph brief where it incorporated by reference its own memorandum in support of its motion for partial summary judgment against Romeo, and stated "Should the Court deny SNIC's Motion on the basis that there was not a settlement reached between Cummins and Romeo, then the subject Motion for Summary Judgment filed by Cummins should be denied." SNIC makes no argument against granting Cummins' motion for summary judgment based on settlement with Romeo in the event that SNIC's motion for partial summary judgment is granted. (Rec. Doc. No. 41).

Law & Analysis

A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). Because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp*., 812 F.2d 265, 272 (5th Cir. 1987).

The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Accordingly, conclusory rebuttals of the pleadings are

insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

B. SNIC's Motion for Partial Summary Judgment against Romeo

    1. Choice of law

A contract to insure a vessel is a maritime contract, and falls within federal maritime jurisdiction. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961); *New Hampshire Ins. Co. v. Martech USA, Inc.*, 993 F.2d 1195, 1198 (5th Cir. 1993). However, "[s]tate law governs construction of marine insurance contracts except where it is displaced by admiralty law." *Bordelon Marine, Inc. v. F/V KENNY BOY,* 780 F.Supp.2d 497, 501 (E.D. La. 2011), citing *Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206, 1210 (5th Cir. 1988). Indeed, there is a presumption that state law applies to marine insurance contracts. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991) ("In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310(1955), the United States Supreme Court concluded that the regulation of marine insurance is, in most instances, properly left with the states. *Id.* at 321."). When dealing specifically with the issue of subrogation rights in a maritime context, the Fifth Circuit has applied Louisiana substantive law. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 605 F.2d 1340, 1345 (5th Cir. 1979). Further, all parties in the instant case rely on Louisiana law and raise no conflicts between Louisiana law and federal maritime law in

5

interpreting the insurance contract at issue. (*See* Rec. Docs. No. 22, 22-1, 27, & 38-1). Therefore, the Court applies Louisiana substantive law to the insurance dispute at issue.

2. SNIC's subrogation rights

"Subrogation is the substitution of one person to the rights of another." La. Civ. Code Ann. art. 1825 (2013). An insurer is entitled to conventional subrogation under the terms of its insurance policy, where it is liable to pay claims on behalf of its insured. *See Howard Griffin, Inc. v. Progressive Cas. Ins. Co.*, 409 So.2d 1262 (La. App. 2d Cir. 1982); *Louisiana Farm Bureau Mut. In. Co. v. Thompson*, 98-0520 (La. 10/20/98), 719 So. 2d 427, 429-30.; *Audubon Ins. Co. v. Farr*, 453 So.2d 232, 234-35 (La. 1984). In other words, when the insurer makes a payment to the insured, the insurer "steps into the shoes" of the insured, and may assert all the legal rights and claims that the insured would have been able to bring against third parties. *Safeway Ins. Co. of Louisiana v. State Farm Mut. Ins. Co.*, 36,853, p.6 (La. App. 2 Cir. 3/5/03); 839 So.2d 1022, 1026, citing *Barreca v. Cobb*, 95-1651 (La. 02/28/96), 668 So.2d 1129; La. Civ. Code Ann. arts. 1825 and 1826; *Balisco Blades & Casting, Inc. v. Fireman's Fund Ins. Co.*, 31,876 (La. App. 2 Cir. 05/05/99), 737 So.2d 164. When an insured prejudices the insurer's subrogation rights against a third party by settling with that third party, the insured is bound to return the insurance proceeds it received from the insurer. *Howard*

*Griffin, Inc.*, 409 So.2d at 1263; *Louisiana Farm Bureau*, 719 So.2d at 429-30.  Where an insurer is aggrieved in its subrogation rights by the insured's settlement with a third party, the insurer's remedy is against the insured, not the third party.  *Audubon Ins. Co.*, 453 So.2d at 235.

Here, Romeo does not dispute SNIC's assertion that under the terms of its policy, SNIC was entitled to subrogation rights of Romeo's claims against the third party Cummins.  (Rec. Docs. No. 22-1 at 11-12 & 27).  Romeo further admits that the only issue which remains on summary judgment is whether "'[Romeo] settled the claims of Romeo against Cummins for the negligent repair of the [M/V PORT EADS]."  (Rec. Doc. No. 27 at 4).

3.  Settlement of Romeo's claims with Cummins

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code Ann. art. 3071 (2013).  "The only formal essential for a compromise is a writing."  *Audubon Ins. Co.*, 453 So.2d at 234, citing Antoine v. Smith, 4 So. 321 (La. 1888).  There are three elements to a compromise under Louisiana law: (1) a disputed claim; (2) a tender of a certain amount in settlement of that claim; and (3) an acceptance.  *Audubon Ins. Co.*, 453 So.2d at 234, citing *Henriques v. Vaccarro*, 56 So.2d 236 (La. 1951).  In *Audubon Ins. Co.*, the Louisiana Supreme Court held that a compromise took

place "[d]espite the absence of a specific release," where the insured endorsed a check from a third party, and the check noted that it was issued in payment of certain property damage. 453 So.2d at 234. This compromise extinguished the subrogation rights of the insurer against the third party, although the insurer had already paid proceeds to its insured for the same aforementioned property damage. *Id*. at 235. The effect of this compromise was that the insurer no longer had subrogation rights against the third party. *Id*. at 235. The Court held that the insurer's only remedy was against its insured. *Id*.

Here, both SNIC and Cummins, assert that Romeo, like the insured in *Audubon Ins. Co.*, settled its claim with the third party, Cummins. (Rec. Docs. No. 22-1 at 10 & 38-1 at 5). In support of this assertion, SNIC points to several emails that detail correspondence between Cummins and Romeo to settle the claims of defective repair to the M/V PORT EADS. (*See* Rec. Docs. No. 22-9, 22-10). Attached to one of the e-mails, dated June 22, 2009, is a copy of a spreadsheet entitled "Romeo_PaPa_Settlement.xls" which lists invoices to be credited in Romeo's favor with the receipt of a check from Romeo to Cummins in the amount of $110,555.14, dated July 1, 2009. (Rec. Docs. No. 22-1 at 11, 22-10, & 23-5). The invoice number to be credited on the spreadsheet, 45304, matches the invoice number for the M/V PORT EADS repairs in dispute. (Rec. Docs. No. 22-10 & 38-6). The Vice-

8

President of Cummins, Richard L. Gele, states in his affidavit that the credits, totaling $69,949.00 on Romeo's open account, were issued to resolve any claim that Cummins had performed negligent repairs on the M/V PORT EADS.  (Rec. Doc. No. 38-4).

As in *Audubon Ins. Co.*, the three elements of a compromise are satisfied in the instant matter.  First, both Cummins and SNIC provide evidence of a dispute between Romeo and Cummins as to the repair of the M/V PORT EADS, in the form of e-mails, invoices, and affidavits.  (Rec. Docs. No. 22-10, 23-5, & 38-6).  Second, there is evidence of a tender of an offer to accept $110,555.14 in exchange for settling the M/V PORT EADS dispute.  (Rec. Doc. No. 38-4 & 22-10).   Third, there is acceptance of the tender, evidenced by the check Romeo subsequently issued to Cummins in the amount of $110,555.14.  (Rec. Doc. No. 23-5).

Romeo submits no affidavits, depositions, interrogatory responses, admissions, or other evidence to rebut the evidence provided by SNIC and Cummins.  Instead, Romeo challenges the admissibility of the e-mail correspondence without citing any law or rule of evidence in support of its objections. (Rec. Doc. No. 27).  The Court rejects these objections as frivolous and unfounded.  (*See* Fed. R. Evid. 801(d)(2)).  In the absence of supporting evidence, Romeo's conclusory rebuttals as to the admissibility of SNIC's evidence fail to establish a genuine issue of material fact as to the circumstances of Romeo's settlement with

9

Cummins.

Under the Louisiana Supreme Court's holding in *Audubon Ins. Co.*, by settling the claim against Cummins, Romeo, as the insured, has extinguished its insurer SNIC's subrogation rights against Cummins. SNIC's only remedy now lies against its own insured Romeo, and not against Cummins. Therefore, SNIC is entitled to summary judgment in its favor against Romeo, and Cummins is entitled to summary judgment in its favor against SNIC. Accordingly, the Court need not address the doctrine of laches argument urged by Cummins.

New Orleans, Louisiana, this 1st day of March, 2013.

_____
UNITED STATES DISTRICT JUDGE